IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No: 3:20-CR-589-JFA |
| | ) | |
| vs. | ) | |
| | ) | |
| GRADY SANDERS | ) | |

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE FROM THE SENTENCING GUIDELINES, AND SENTENCING MEMORANDUM

Defendant Grady Sanders ("Grady" or "Defendant"), by and through his undersigned counsel, Joseph P. Griffith, Jr., hereby respectfully moves for a downward departure from the United States Sentencing Guidelines' ("Guidelines" or "USSG") recommended sentence and/or a variance from the same pursuant to 18 U.S.C. § 3553(a).

First, Grady apologizes to the Court for his unlawful conduct, and is deeply ashamed and remorseful of the wrongdoing he has committed. He has vowed to never commit any other offenses, and to lead a fully rehabilitated, law-abiding life. Grady has fully accepted responsibility for his misconduct, has pleaded guilty to the misdemeanor charge, has voluntarily agreed to pay the entire amount of restitution of $85,680 at sentencing, and has agreed to cooperate with the Government. Grady is relying on his family and friends to help him through this most difficult and humiliating period of his life.

While Grady understands the severity and nature of his misconduct, he respectfully and humbly requests that the Court impose a sentence of probation or home confinement in order to allow him to provide for his mother who is suffering from Alzheimer's disease. Such a sentence which restricts his freedom but allows him to continue his work as a UPS truck driver and to continue his much-needed assistance to his aging mother is a reasonable

alternative to incarceration, which is clearly not necessary. Court-imposed living restrictions and community service will surely meet the societal goals of both penalizing and rehabilitating Grady.

This motion (the "Motion") for a downward departure and/or variance is based on, but not limited to, Section 3553(a) and the following mitigating factors:

1. Grady has an extraordinary history of pre-arrest civic service and charitable good works as a volunteer coach for over 18 years;

2. Grady has demonstrated overwhelming remorse and there is no need for incarceration;

3. Grady has extraordinary family and community support;

4. Grady has demonstrated extraordinary cooperation and acceptance of responsibility in voluntarily paying full restitution and agreeing to testify in companion prosecutions;

5. Grady is not a threat to the community and is a low risk for recidivism;

6. Grady has no criminal history other than the subject non-violent misdemeanor offense, which was atypical conduct;

7. A Guidelines sentence of imprisonment would be far greater than necessary to satisfy the purposes of sentencing;

8. Grady had a minimal role in the criminal activity and a potential incarceration sentence substantially overstates the seriousness of the misdemeanor offense;

9. Grady's sentence should be probation or home confinement with conditions in order to avoid disparate treatment in comparison to similarly situated defendants;

10. Grady is the sole member of his immediate family available to assist his nursing home-bound mother who suffers from Alzheimer's disease;

11. Given the recent spike in Covid-19 cases, placing Grady in prison unnecessarily increases the health risks to Grady; and,

12. Grady will lose his 31-year job as a UPS truck driver if sentenced to any time in prison.

A review of these mitigating factors strongly demonstrates that Grady should not be sentenced to any period of incarceration in federal prison, let alone incarceration for up

to 6 months.  Rather, the totality of the circumstances indicate that Grady should receive a

non-incarceration sentence ranging from probation with conditions to home confinement

with conditions.

## I.    **INTRODUCTION**

On September 30, 2020, Grady was charged in an Information with making false

representations in violation of 42 U.S.C. § 1320a-7b(a)(2)(ii), a misdemeanor. The specific

charge in the one-count Information, ECF # 1, was as follows:

> On or about January 17, 2017 in the District of South Carolina, the
> Defendant, **GRADY SANDERS**, knowingly and willfully made or caused
> to be made a false statement or representation of a material fact for use in
> determining rights to any benefit or payment under a Federal Health Care
> Program, to wit, **GRADY SANDERS**, did knowingly and willfully execute
> and submit or cause to be submitted a fraudulent Medicare Enrollment
> Application (CMS-855) knowing it to contain a false statement or
> representation of a material fact.

> In violation of Title 42, United States Code, Section 1320a-
> 7b(a)(2)(ii), a misdemeanor.

On October 6, 2020, a plea agreement was also filed.  ECF # 4.  On November 17,

2020, Grady pleaded guilty to the foregoing single misdemeanor count Information.   ECF

# 16.

 On January 28, 2021 a Pre-Sentence Report ("PSR") was issued by U.S. Probation

Officer Maressa Hawkins ("Hawkins").  On February 2, 2021, objections to the PSR were

presented to Hawkins by Grady's counsel.   On February 16, 2021, a revised Pre-Sentence

Report ("PSR-R") was issued by Officer Hawkins.  The PSR-R calculated a Total Offense

Level of 6 with a Criminal History Category of I (0 points) pursuant to the Guidelines,

which included a 4 level reduction for minimal role in the offense, and a 2 level reduction

for acceptance of responsibility.  The Guidelines recommended sentence set forth in the

PSR-R is a sentence range of 0 to 6 months. However, a level 6 Total Offense Level, which is in Zone A of the Guidelines Sentencing Table, does not require any sentence of imprisonment, and can be completely served with probation and/or home confinement. The Court is urged to not impose any prison time in this case.

As set forth below, to the extent that a departure or variance is necessary to support a sentence of probation, both are authorized and appropriate under the Guidelines and Title 18, United States Code, Section 3553(a).  The Defendant recognizes that the PSR-R's recommended sentencing range of 0 to 6 months is the lowest possible under the Guidelines, but, to the extent that imprisonment of up to 6 months is authorized thereunder, submits this Motion to urge the Court to consider a sentence which does not include incarceration.  This Court's sentence should be reasonable, and, under the circumstances, the only reasonable sentence is the imposition of probation or home confinement.  Gall v. United States, 552 U.S. 38 (2007).

## II.    **Pertinent Background Facts**

Grady was born in Georgia but was raised and has lived in Charleston, South Carolina, for most of his life.  He has one older brother, Thurston, who resides in Georgia. Grady was never emotionally close to his father, Jimmie Sanders, who suffered from severe alcoholism, was abusive towards his wife, and died in 2008. His parents divorced when Grady was 13 years old, and it was a traumatic event for Grady and his family.  Post-divorce life was financially difficult for Grady, his mother and brother.  Grady worked at K-Mart Corporation throughout high school.  After graduating from Summerville High School, Grady attended Trident Technical College for approximately three years. Grady took a part-time job as a United Parcel Service ("UPS") truck driver during college.

Eventually, Grady quit going to college to take a full-time job as a UPS truck driver.  Grady has been driving UPS trucks, mostly on the grave-yard shift, for over thirty-one years.

Grady is happily married to his wife Shelly, a teacher at Howe Hall Elementary school in Goose Creek, South Carolina, and he has two grown step-sons, Ross Jordan and Ryan Jordan.  Grady successfully raised his two step-sons as his own, is the only father they have ever known, and he and Shelly put son Ryan through college.

Despite the grueling hours of mostly night-shift work as a UPS truck driver, Grady's passion for coaching led him to devote a substantial amount of volunteer time as a football coach.  Grady's volunteer coaching career spanned over eighteen years, and included coaching stints at Goose Creek Recreation Commission league (8 years), Faith Christian School (2 years), and Cane Bay High School (8 years).  Grady's dedication to coaching has been remarkable and he has touched the lives of hundreds of children and young adults over the years.

In about 2018, Grady's coaching career had to be curtailed due to the increased care-taking demands of his mother, Addie Sanders, who has rapidly progressing Alzheimer's disease.  Grady has been named the Power of Attorney and Medical Power of Attorney for his 76-year old mother, and had to place her in the Merrill Gardens Assisted Living facility in 2018 due to her dementia.  Grady is the only family member living near his mother, and he spends many hours a week at the nursing home providing care to her. Grady buys groceries for his mom, helps clean her apartment, and helps bathe and clothe her. Grady and his brother split the financial burdens of his mother's nursing home expenses.

Grady has absolutely no criminal history other than the subject misdemeanor charge, and has otherwise lived an exemplary, law-abiding life. His body of community service as a coach is lengthy and impressive, and his continued loving care-taking services for his mother demonstrate his devotion to his family.

Grady is a loving father and husband, has considerable family and community support to help him through the rehabilitation process, and he has expressed deep-felt remorse for his misconduct.[1]  Grady has truly endeavored to show the Court that he is committed to rehabilitation.  Grady has routinely worked 60 hours per week during the last year to help raise the funds necessary to pay full restitution in this case.  Furthermore, as noted in the PSR-R, Grady has been informed that he will likely lose his long-held job at UPS if he is sentenced to even one day in prison.

### III.    SENTENCING PARADIGM PER BOOKER, GALL, USSG AND 18 U.S.C. § 3553

The Guidelines are now but one of seven statutory factors to weigh when formulating a sentence.  United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553. In Booker, the Supreme Court held that the mandatory manner in which the Guidelines required courts to impose sentencing enhancements based on facts found by the court, by a preponderance of the evidence, violated the Sixth Amendment to the Constitution. The Supreme Court remedied the constitutional violation by severing two statutory provisions, 18 U.S.C. § 3553(b)(1) (requiring sentencing courts to impose a sentence within the applicable Guideline range), and 18 U.S.C. § 3742(e) (setting forth appellate standards of review for Guideline issues), thereby making the Guidelines advisory.  Booker, 543 U.S.

---

[1] See Exhibit A, Grady's Apology Letter, attached.

at 244-45.  While no longer mandatory, <u>Booker</u> makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing."  <u>Id.</u>, at 264.

First, the Court must establish the correct sentence under the Guidelines. <u>Gall</u>, 552 U.S. at 49; <u>United States v. Blue</u>, 877 F.3d 513, 517 (4th Cir. 2017).  Second, the Court must allow the parties to argue for the sentence they deem appropriate.  <u>Gall</u>, 552 U.S. at 49-50; <u>Blue</u>, 877 F.3d at 517-18.  Third, the Court must consider all of the factors set forth in 18 U.S.C. § 3553(a), conduct an "individualized assessment" of the facts and arguments presented, and decide and impose an appropriate sentence.  <u>Gall</u>, 552 U.S. at 50; <u>Blue</u>, 877 F.3d at 518; <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007) ("In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").[2] Finally, the Court must adequately explain the chosen sentence. <u>Id.</u> The sentence must be "within the statutorily prescribed range and ... **reasonable**." <u>United States v. Hughes</u>, 401 F.3d 540, 546-47 (4th Cir. 2005) (emphasis added).[3]

---

[2] The District Court's lack of a presumption of reasonableness of a Guidelines sentence is not to be confused with any presumption of reasonableness an appellate court may apply. <u>Rita</u>, 551 U.S. at 351 ("Given our explanation in <u>Booker</u> that appellate 'reasonableness' review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review.").  The reasonableness of a sentence must take into account the "totality of the circumstances." <u>Gall</u>, 552 U.S. at 38.

[3] The Court is "free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors."  <u>United States v. Ranum</u>, 353 F.Supp.2d 984, 987 (E.D.Wis. 2005).

motion to depart - grady sanders.2021-07-22

## IV.    A DOWNWARD DEPARTURE IS WARRANTED

A downward departure for a defendant is generally governed by Sections H and K of the Guidelines, and there are several individual grounds for a downward departure for Grady.

### A. Grady's Historical Community Service and Long-Time Good Works as a Volunteer Coach Warrant a Downward Departure

As noted above, Grady has a substantial past history of charitable good works and community services as a volunteer coach which warrant a downward departure. United States v. Canoy, 38 F.3d 893, 906 (7th Cir. 1994) (charitable and civic activities may, if exceptional, provide a basis for departure); United States v. Cooper, 394 F.3d 172, 176-178 (3rd Cir. 2005) (departure and sentence of probation was warranted for defendant's exceptional good works who made charitable contributions, ran a youth football team in a depressed area, mentored its members, and helped several members attend better high schools or go to college, which entailed "hands-on personal sacrifices which have a dramatic and positive impact on the lives of others" ). Grady's contributions as a volunteer coach for almost twenty years are well-known, and much appreciated.  Cane Bay High School coach Zehr, in his letter of support, captured the essence of Grady's past contributions as a coach by noting that:

> He served as a coach, mentor, and role model to those young kids.  I do not recall him ever missing a practice or game even if it meant operating with little or no sleep….
>
> Grady developed young players who would work their way up to varsity, but he also helped on Sundays to game plan for our opponent the next week.  He brought a great deal of alternative concepts and out of the box thinking that helped us to create a strong football program at Cane Bay High School.

Exhibit B, Zehr Letter of Support.

Coach Zehr noted that Grady was more than a coach; he was a friend who helped Zehr get through his wife's terrible car accident by picking up Zehr's children from school and watching over them. Id.  This is most reflective of Grady's true character.

While § 5H1.11 of the Sentencing Guidelines states that "civic, charitable, or public service ... and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range[,]" the Introductory Commentary to Part H of the Guidelines provides that they "may be relevant to this determination in *exceptional* cases."  (emphasis added). As explained by the Supreme Court, a court may still depart "if the [discouraged] factor is present to an *exceptional degree* or in some other way makes the case different from the ordinary case where the factor is present."  Koon, 518 U.S. at 96 (emphasis added). This is clearly such a case.

There are numerous cases which stand for the proposition that a defendant's past civic and charitable contributions and good works justify, in part, a downward departure. United States v. Greene, 249 F.Supp.2d 262, 264-265 (S.D.N.Y. 2003) (seven-level departure in part due to extraordinary charitable good works); United States v. Takai, 941 F.2d 738, 744 (9th Cir. 1991) (downward departure in part due to charitable acts-outstanding good deeds); United States v. Serafini, 233 F.3d 758, 776 (3d Cir. 2000) (community service and charitable works were sufficiently "extraordinary and exceptional" to justify three-level downward departure for community and charitable activities); United States v. Woods, 159 F.3d 1132 (8th Cir. 1998) (defendant's exceptional charitable efforts – bringing two troubled young women in her home, paying for them to attend private high school – and also assisting elderly friend to move from nursing home to apartment –

justified one level departure); <u>United States  v. Jones</u>, 158 F.3d 492, 500-501 (10th Cir.

1998) (defendant's long history of community service in part justified departure).

### B. Grady's Post-Arrest Rehabilitation Warrants a Downward Departure

Grady has demonstrated extraordinary post-arrest rehabilitation with continued

good works, continued over-time work to obtain the funds necessary to pay restitution, and

has expressed deep-felt remorse.  Since his charge in September of last year, he has

diligently continued his over-time work to be able to pay restitution.  This is a clear sign

of his rehabilitation efforts. Likewise, while his care-taking services for his mother might

not necessarily be considered "community service," these volunteer efforts in support of

his mother should demonstrate to the court the true nature of his character and is certainly

reflective of a person who is continuing to rehabilitate himself. Furthermore, Grady has

expressed heart-felt remorse to the Court, and has vowed to never break the law again.

Exhibit A, Letter of Apology.

"[C]ourts have recognized ***post-arrest*** conduct may justify a departure even though

section 3E.1.1 rewards acceptance of responsibility."  <u>United States v. Sally</u>, 116 F.3d 76

(3rd Cir. 1997) (emphasis added); <u>United States v. Whitaker</u>, 152 F.3d 1238 (10th Cir.

1998) (post-offense rehabilitation may be a basis for downward departure); <u>United States</u>

<u>v. Watson</u>, 2000 WL 1840080 (D.Me. Dec. 14, 2000) (unpublished) (recognizing

departures for post-offense, pre-sentence rehabilitation); <u>United States v. Brock</u>, 108 F.3d

31 (4th Cir. 1997) (same); <u>Pepper v. United States</u>, 562 U.S. 476 (2011) (even post-

sentencing rehabilitation may be taken into account); <u>United States v. Walker</u>, 252

F.Supp.3d 1269, 1306-7 (D.Utah. 2017) (post-offense rehabilitation regarding drug

addiction, family support network, and age support a home confinement sentence in bank

robbery case);  United States v. Goldberg, 295 F.3d 1133, fn. 3 (10th Cir. 2002) (extraordinary community service, collateral employment consequences of conviction, and extraordinary post-conviction rehabilitation justified a downward departure); United States v. Greene, 249 F.Supp.2d 262 (S.D.N.Y. 2003) ("Greene is entitled to a downward departure for his charitable works."); United States v. Wilke, 156 F.3d 749 (7th Cir. 1998) (community ties and charitable good works may be considered factors in support of a downward departure in extraordinary cases).

Because Grady has demonstrated exceptional post-arrest rehabilitation along with deep-felt expressed remorse, a downward departure is in order.

### C. Grady's Extraordinary Acceptance of Responsibility for Extraordinary Restitution Warrants a Downward Departure

Grady should be granted a downward departure for extraordinary acceptance of responsibility with respect to his extraordinary efforts to pay full restitution.  Extraordinary restitution efforts are not a prohibited factor to consider for a downward departure under the Guidelines.  At most, they are a discouraged factor.  In United States v. Hairston, the Fourth Circuit Court of Appeals held that restitution was a discouraged factor but could still be the basis of a downward departure because it was a factor considered under USSG § 3E1.1, note 1(C).  96 F.3d 102 (4th Cir. 1996).  Other courts have agreed with the Fourth Circuit's assessment.  United States v. Kim, 364 F.3d 1235, 1242 (11th Cir. 2004) (Guidelines do not list restitution as a prohibited factor for departure under § 5H1.1–5H1.12, and restitution is listed as a factor supporting reduction under § 3E1.1, note 1(C), therefore restitution is a permissible ground for departure); United States v. Miller, 991 F.2d 552 (9th Cir. 1993) (voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure).

Under the holdings of <u>Hairston</u> and <u>Kim</u>, extraordinary voluntary restitution may be the basis for a downward departure.  As such, Grady's extraordinary assistance in voluntarily providing full restitution is a reasonable basis for a downward departure.

### D. Grady's Family Ties & Community Support Warrant a Downward Departure

As the Court will learn at sentencing, Grady's family and friends have promised to provide the emotional and communal support Grady may need to rehabilitate himself and re-assimilate into society and avoid repetition of the offensive conduct.[4]  The extent of a family's and friends' social support to ensure a defendant's rehabilitation is a recognized factor in sentencing post-<u>Booker</u>.  In <u>United States v. Wachowiak</u>, 496 F.3d 744 (7th Cir. 2007), the sentencing judge's imposition of a non-Guidelines sentence upon a defendant was upheld, in part, because of "the positive role [Defendant's] family members, who promised to aid in his rehabilitation and reintegration into the community and support his efforts to avoid reoffending."  In <u>Wachowiak</u>, the defendant's Guidelines sentence was cut by more than half.  <u>Id.</u> (sentencing court believed mitigating circumstances outweighed aggravating ones wherein defendant cooperated with government, gave a detailed confession, expressed sincere remorse, and pleaded guilty in a timely fashion, posed little risk of re-offending, was motivated to change).[5]  So too, Grady's family and community support system should be considered as a basis for a departure in this case.

### E.  Need to Avoid Disparity in Sentencing Warrants a Downward Departure

---

[4] <u>See</u> Exhibit B, Letters of Support, attached.

[5] Like the defendant in <u>Wachowiak,</u> Grady's mitigating circumstances outweigh any aggravating ones; he cooperated with government, gave a detailed debriefing, expressed sincere remorse, pleaded guilty in a timely fashion, is motivated to change, maintained gainful employment since charged, worked over-time to be able to pay full restitution, continued his volunteer care-taking services, and poses little risk to society.

To the extent that the Court can consider the need to avoid sentencing disparities among similarly situated defendants, a downward departure is warranted.  United States v. Ahuama, 686 Fed.App'x 82, 85 (3rd Cir. 2017) (affirming district court decision that had granted "a downward departure on grounds that it deemed meritorious: to 'avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.'").  As set forth below in the Section 3553(a)(6) analysis, there are a number of similarly situated defendants in financial fraud cases in which sentences of probation and/or home confinement have been imposed nationwide.  Notably, defendant Herb Kimble, who played a major role in this Medicare fraud scheme, has an 11(c)(1)(C) plea agreement filed with the Court in which the stipulated sentence is probation.  Under these circumstances, it would be patently unfair and constitute disparate treatment to sentence Grady, who played an extremely minor role in the offense, to anything but probation.

### F.  A Downward Departure is Warranted Because any Guidelines Sentence of Incarceration is Greater Than Necessary to Satisfy Sentencing Purposes and Substantially Overstates the Seriousness of the Misdemeanor Crime

A Guidelines sentence of any time in prison also "substantially overstates" the seriousness of the Grady's misdemeanor crime and is "far greater than necessary" to satisfy the purposes of sentencing. "Courts have long recognized that where the sentence called for by the guidelines would result in punishment *greater than necessary, the court can depart downward*." United States v. Redemann, 295 F. Supp. 2d 887, 896 (E.D.Wis. 2003) (emphasis added).  Courts have also recognized the concept that a Guidelines sentence can substantially overstate the seriousness of a crime and, thus, be a proper basis for a downward departure.  United States v. Brennick, 134 F.3d 10, 15 (4th Cir. 1998) ("notion

… that the loss table may under- or overstate the seriousness of the offense is little more than another way of saying that departures … may be warranted for good cause."); see also, USSG § 4A1.3(b)(1) (downward departure may be warranted when criminal history substantially over-represents the seriousness of the crime or the likelihood that the defendant will commit other crimes).

Grady has no prior criminal history, is not a threat to society, is highly unlikely to repeat his misconduct, has cooperated fully, has voluntarily agreed to pay full restitution at sentencing, and has demonstrated extraordinary volunteer good works, post-arrest rehabilitation and deep-felt remorse.

Grady simply should not be required to serve a sentence of incarceration in prison for his conduct because such a sentence would be greater than necessary to accomplish the purposes of sentencing given the totality of the circumstances and such a sentence would vastly overstate the seriousness of the crime given all of the mitigating factors set forth herein.[6]

### G. Other Miscellaneous Mitigating Factors Warranting Downward Departure

There are other miscellaneous mitigating factors which are applicable in Grady's case to justify a downward departure post-Booker, including the following:  (1) Grady has an exemplary employment history;[7] (2) Grady has already suffered considerable damage to his reputation; and, (3) Grady will lose his job if imprisoned.[8]

---

[6] Grady is certainly not asserting his crime is not a serious offense; rather, he believes that any sentence of imprisonment pursuant to the Guidelines for his misconduct is excessive given all of the mitigating factors enumerated herein.

[7] USSG § 5H1.5.

[8] United States v. Gaind, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where defendant was punished by the loss of his business); United States v. Vigil,

**H. Downward Departure Warranted in Considering Factors Independently and/or in Combination**

Therefore, based upon the foregoing mitigating factors, when considered independently and/or in combination, a downward departure from the advisory Guidelines range which eliminates incarceration is appropriate in this case. A departure to a sentence of probation and/or home detention may satisfy the entire minimum term. USSG § 5C1.1(b). Such a departure is warranted given the exceptional individual and combined mitigating factors of this case, and is certainly reasonable under the circumstances.

## V.    A VARIANCE IS WARRANTED UNDER 18 U.S.C. § 3553

Even if the Court were to decide that a Guidelines departure is inappropriate, the Court may vary from the advisory Guidelines to impose any reasonable sentence based on a consideration of the § 3553 factors. Booker, 543 U.S. at 246, 263-64. As analyzed below, a variance from the Guidelines is warranted, and a sentence of probation or home detention, both with reasonable conditions, is authorized and appropriate under the facts and circumstances of this case.

The factors set forth in 18 U.S.C. § 3553(a), are as follows:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--

---

476 F. Supp. 2d 1231, 1235 (D.N.M. 2007) (finding variance appropriate where defendant was collaterally punished by loss of his position and reputation, widespread media coverage, and emotional toll of two lengthy public trials); United States v. Samaras, 390 F. Supp. 2d 805, 809 (E.D.Wis. 2005) (granting variance in part because defendant lost a good public sector job as a result of his conviction).

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [by the] guidelines or policy statements…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## A.  Section 3553(a)(1)

The first set of factors in §3553(a)(1) -- the nature and circumstances of the offense and the history and characteristics of the defendant – favors Grady.

With regard to the nature and circumstances of the offense, the subject unlawful conduct to which Grady pleaded guilty is a non-violent misdemeanor offense.  In recognition of his extremely limited role in the offensive conduct and his cooperation, Grady has not been charged with any felony violations.  Furthermore, U.S. Probation Officer Hawkins appropriately found that Grady was entitled to a 4-level downward adjustment for his minimal role in the criminal activity pursuant to USSG § 3B1.2(a).

Grady was introduced to the subject Medicare fraud scheme by one of his best friends from high school – Andrew Chmiel ("Chmiel") – and was told if he signed a CMS Form 855 indicating he was the owner of B&L Medical Supply, Inc. ("B&L") that he would be entitled to receive about $65,000 in compensation annually.  Unfortunately, Grady had a lapse in judgment and, on January 18, 2017, signed the CMS-855 form claiming that he was an owner in B&L when, in fact, he was not.  The true owners of B&L were Chmiel, CPA Nadia Levitt and Aaron Williamsky, and these three apparently owned

and operated at least 25 similar Durable Medical Equipment ("DME") companies which used call centers owned by Kimble and paid kickbacks for DME referrals for Medicare beneficiaries.    Grady had no role in the day-to-day operations of B&L, was simply a "straw" owner, and had no direct knowledge of or participation in the DME fraud scheme other than his false certification on the CMS-855.  Grady received 56 payments from B&L of about $1,530, and these payments ended about April of 2019.  Grady had no role in the paying of kickbacks nor the filing of false claims to the federal health care insurance programs.  Because Grady's role was so limited, a probationary sentence is warranted.

With regard to the history and characteristics of the defendant, Grady, a 50-year old grave shift truck driver with a high school diploma, has absolutely no prior criminal history, has fully admitted his guilt, has expressed deeply felt remorse, has cooperated, and has tried in the best manner he could to atone for his transgressions by increasing his work hours to pay full restitution.  The record shows Grady has led an otherwise exemplary life of hard work, devotion to his family and friends, and a long-time commitment to volunteer coaching.  The Letters of Support provide insight to Grady's good character:

> I am Grady's oldest stepson.  Grady has been in my life since I was five years old. Over the last twenty seven years I have had the honor and privilege to learn what it is to be a man under Grady's guidance.  Practically my whole life the only father figure I ever knew was Grady Sanders!  Growing up and still to this day, Grady has been the man that my biological father couldn't even dream of being.  I don't know about you your Honor but for a man to take in two kids and raise him as his own, that sure does make a lasting impression of the type of man Grady is.  As children we were very well taken care of, we never had to want for anything.  Not just financially but if we ever had questions or wanted advice, Grady was right there no exceptions.  As an adolescent I was very rebellious and had to learn things the hard way but Grady was always there.   He demonstrated patience, love and dedication with his actions and words of wisdom.  He also demonstrated how a man of honor conducts himself and how one must contribute to society.  Now in my thirties I can

honestly say that every trait that is honorable in me, I learned from Grady and I am forever grateful that he chose us to mentor….[9]

* * *

I have people volunteer to coach at Cane Bay every year.  Some good, some bad, but most last a year or two before they realize that it is a lot of time and effort with very little reward.  Coach Grady Sanders helped me for eight years and was in it for the right reasons.  He was not trying to get playing time for his kid or believed standing on the sideline was some type of status symbol.  Grady wanted to help kids to grow and develop and that is exactly what he did.

Over time, Grady became a close friend.  My wife was in a terrible car accident in 2011.  With two young children and a job that required 70-80 hours a week during season, I needed a great of help from family and friends.  Grady became that person. Whether it was helping to pick my kids up from school or keeping an eye on them until we were finished with practice, Grady was always willing to help.  My children are older now, but have fond memories of Coach Sanders and ask about him often.  They think of him as family.[10]

* * *

Grady Sanders is my brother in law and I have known him approximately *27* years. He has been more of a brother to be honest and has been such a good husband to my sister and (step) dad to my nephews. Their biological father was abusive and was horrible to his kids and my sister. I was so glad when Grady came into their lives. He has been a wonderful role model to them and I'm happy to say they have grown up to be such good young men and are now making a difference as fathers and community ambassadors.

A member of our family went through a very difficult time in their lives and struggled with addiction. When times became very difficult, he did not abandon his family but stood by us and assisted in every way to help the family heal. This in my opinion shows strong character.  When I have needed a brother, he has always been there.[11]

* * *

Grady began working full time for United Parcel Service soon after we began dating. He worked long hours and was committed to being an employee that could

---

[9] Exhibit B, Letter of Support – Ross Jordan.
[10] Exhibit B, Letter of Support – Coach Russell Zehr.
[11] Exhibit B, Letter of Support – Brenda Chiasson.

be counted on. He was called upon by his supervisors on numerous occasions to work when others could not, assist others, and come in early when needed, even if he was not feeling well himself. He obtained his CDL license a few years after becoming a full time driver and has been a dependable employee for over 30 years.

Over the last twenty six years, Grady has supported me in so many ways. He encouraged me to continue with college, even though it meant that we would be living solely on his income from UPS. A few years later, when I returned to college to obtain my graduate degree, he continued to financially support our family. Grady fostered my continued growth, not just educationally but emotionally as well. I have battled anxiety and depression throughout our marriage. Grady has consistently shown me patience and love. He has taken care of me, encouraged me, and supported me during the many phases of our lives. [12]

It is respectfully suggested that Grady deserves a variance from a sentence of incarceration for any amount of time (up to six months) under the Guidelines calculations. Moreover, as will be more fully described at sentencing, Grady has the full support of his family and friends to provide the guidance which may be necessary for him to achieve full rehabilitation from his misconduct during a period of probation and/or in a home confinement setting. Further, a sentence of even one day of imprisonment would result in Grady losing his UPS job of over 31 years.

Grady asks this Court to grant a variance based on the nature and circumstances of his conduct as well as his personal history and characteristics. The Fourth Circuit has upheld a sentencing variance based on the nature and circumstances of the defendant and his conduct, pursuant to Section 3553(a). United States v. Pauley, 511 F.3d 468, 469 (4th Cir. 2007).

---

[12] Exhibit B, Letter of Support – Shelly Sanders.

**B.  Section 3553(a)(2)**

The second set of factors in § 3553(a)(2)(A)-(D) addresses several traditional sentencing considerations.  A probationary and/or home confinement sentence would still reflect the seriousness of the offense, promote respect for the law, deter future criminal conduct, and provide just punishment for a <u>misdemeanor</u> offense because Grady's liberty would be impaired by the typical restrictions imposed with either such sentence.

In this case, there is no indication of a need to protect the public from further criminal conduct by Grady.  He is a non-violent offender who is highly unlikely to repeat his misconduct, and Grady has demonstrated atonement and has become more focused on leading a law-abiding life.  Grady is committed to rehabilitating himself and again becoming a productive member of society.  He has tirelessly worked his job as a UPS truck driver, and is the sole member of his family providing, and available to provide, assistance to his elderly mother who suffers from Alzheimer's disease.

The "most effective manner" to provide Grady further rehabilitation would be through a probationary and/or home confinement sentence.  There is simply no indication of a need to incarcerate Grady as punishment for his crime.

While the Court must impose a sentence that "afford[s] adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), it is not necessary to imprison Grady to accomplish that goal. Many Courts have recognized that the collateral consequences of a conviction can serve as a powerful deterrent to potential criminals. <u>United States v. Edwards</u>, 595 F.3d 1004, 1016 (9th Cir. 2010) (holding that § 3553 "does not require the goal of general deterrence be met through a period of incarceration" and upholding District Court's determination that probation and restitution provided adequate deterrence, despite the defendant's guidelines range being

27-33 months imprisonment); United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) (sentencing Court properly considered that the "conviction itself already visit[ed] substantial punishment" on defendant by likely barring him from future work in his profession (internal quotation marks omitted)); United States v. Anderson, 533 F.3d 623, 633 (8th Cir. 2008) (Court properly considered "atypical punishment such as the loss of [defendant's] reputation"); United States v. Sachakov, Case No. 11-CR-120, 2013 WL 101287, at *3 (E.D.N.Y. Jan. 8, 2013) (fact that defendant was likely to lose medical license relevant to setting appropriate sentence); United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("With his reputation ruined by his conviction, it was extremely unlikely that he would ever involve himself in future misconduct.").

Research on deterrence and criminal sentencing also indicates that, particularly for white collar criminals, "informal sanctions (such as social censure, shame, and loss of respect)" are "equally important [as imprisonment] in producing the deterrent outcome." Zvi S. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007). There is no empirical evidence that lengthy sentences of incarceration provide an additional deterrent effect. Id. (no evidence supporting "the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders"). Sentencing Courts have recognized the "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." Adelson, 441 F.Supp. 2d at 514.

As noted above, a Guidelines sentence which authorizes up to 6 months in prison also substantially overstates the seriousness of the Grady's misdemeanor crime. Respectfully, Grady should not be required to serve any amount of time in prison for his

involvement with B&L because any incarceration under the Guidelines calculation substantially overstates the seriousness of the crime.[13]

## C.  Section 3553(a)(3)

The third factor in § 3553(a)(3) -- the kinds of sentences available – encourages the Court to consider sentencing options, such as probation and home confinement, in addition to imprisonment.   Both of these sentencing options are available to the Court.  Here, for the reasons stated above and below, a sentence of probation and/or home confinement, with appropriate conditions, is certainly "reasonable" and therefore authorized under Booker.

The United States Supreme Court recognized the fact that probation is not an act of leniency and is a severe imposition on one's liberty.  In Gall, 552 U.S. at 48, the Supreme Court approved a 100% departure from the Guidelines range to probation, and noted as follows:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. **Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.** See United States v. Knights, 534 U.S. 112, 119, (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. (emphasis added)

---

[13] Again, Grady is certainly not asserting his crime is not a serious offense.  He just earnestly believes an incarceration penalty for his conduct is excessive.

It is respectfully submitted that a probationary, non-incarceration sentence that would significantly limit Grady's freedom, combined with the usual conditions of probation and/or home confinement, would constitute adequate punishment for Grady, and would also serve as a forceful, tangible reminder to the community of the seriousness of the offense.

### D.  Sections 3553(a)(4) and (a)(5)

The fourth and fifth factors in § 3553(a)(4)-(5) require the Court to consider the Guidelines and USSG Policy Statements applicable to the case.  The Guidelines and Policy Statements are thoroughly discussed above in the departure section.  A downward departure, based upon Grady's historical community service good works and volunteerism, Grady's deeply expressed remorse, Grady's extraordinary acceptance of responsibility for voluntary paying full restitution at sentencing, Grady's strong family ties and community support, the need to avoid sentencing disparity, the fact that the Guidelines sentence is greater than necessary to satisfy sentencing purposes and substantially overstates the seriousness of the misdemeanor crime, as well as the other factors and mitigating circumstances set forth above and below, is warranted, and a sentence of probation and/or home detention under the Guidelines is authorized.[14]  Again, even if the Court were to conclude that a Guidelines departure was not technically available, a variance based upon the same factors and considerations set forth above would still certainly be warranted and reasonable. The Guidelines range of up to 6 months incarceration is neither mandatory nor

---

[14] "After Booker, ... that a factor is discouraged or forbidden under the [G]uidelines does not automatically make it irrelevant when a court is weighing statutory factors apart from the [G]uidelines."  United States v. Husein, 478 F.3d 318, 326 (6th Cir. 2007).

should such a sentence be presumed reasonable. <u>Nelson v. United States</u>, 129 S.Ct. 890, 892 (2009). The Guidelines are just one of many factors this Court must consider. This Motion sets forth ample support for both a Guidelines downward departure and/or a downward variance in this case, and clearly justifies a sentence of probation and/or home confinement.

### E.  Section 3553(a)(6)

The sixth factor in § 3553(a)(6) focuses on sentencing disparity among similarly situated defendants.  In this case, while all of the aforesaid mitigating circumstances justifying a departure or variance are extraordinary factors that distinguish this case from the heartland of similar fraud-type cases, a review of similarly situated defendants convicted of fraud or financial crime charges demonstrably support a probationary sentence in Grady's case.

In particular, because the kingpin defendant in this scheme, Kimble, has a probationary sentence agreed to by the Government, it would be severely disparate treatment to sentence Grady to anything but probation.  Kimble had a major, primary role in the criminal activity at bar, yet is set to receive probation.  Grady had a very minimal role in the criminal activity at bar, as recognized by the U.S. Probation Office and not contested by the U.S. Attorney's Office, and should receive no greater sentence than Kimble.  <u>United States v. Presley</u>, 547 F.3d 625, 631 (6th Cir. 2008) (affirming downward variance based on co-defendant's reduced, plea-based sentence).

A sampling of cases from across the country indicate that fraud or financial crimes defendants with similar or greater offense levels and/or loss amounts have been sentenced to probation and/or home confinement.

In <u>United States v. Warner</u>, Case No. 1:13-cr-731, ECF # 30 (N.D.Ill. Jan. 14, 2014), the defendant was sentenced to two years' probation for tax fraud relating to $107 million in concealed off-shore accounts.  Warner's recommended Guidelines range was 46 to 57 months, an offense level of 23 and criminal history of I, but the sentencing court departed down to probation, in part due to his past charitable good works and community service and his payment of restitution.  The Seventh Circuit Court of Appeals upheld the probationary sentence, noting that the district court relied on Warner's past charitable good works and community service, as well as the humiliation already suffered, lack of criminal history, payment of his civil liabilities, and the court's view that Warner "was extremely unlikely to commit any further crimes."  <u>United States v. Warner</u>, 792 F.3d 847, 854 (7th Cir. 2015).  The district court had also noted that Warner had offered to mentor students at three area high schools as part of his probation, and that "society will be best served by allowing him to continue his good works' outside of prison.'"  <u>Id.</u> at 854.   Warner was ordered to mentor the high school children as part of his community service.

Warner's case is extremely similar to Grady's situation.  He has a long history of community service and coaching volunteerism, has demonstrated post-arrest rehabilitation in working over-time to be able to pay full restitution, has already been severely humiliated as a result of his guilty plea and the negative press regarding the same, has fully cooperated with law enforcement authorities and will continue to do so, has no criminal history, has no history of violence, has many supporters vouching for his good character and integrity, and is highly unlikely to commit any further crimes.  Under the circumstances, imposing probation and/or home confinement on Grady, with typical conditions including community service, would be, as in the case of Warner, quite "reasonable" and "'sufficient,

but not greater than necessary' to accomplish the basis purposes of sentencing: just punishment, deterrence, incapacitation, and rehabilitation." Id. at 855.

The Court should not measure similarly situated defendants only in the pending litigation, but should look to similarly situated defendants in other cases as well. Amando-Reyes v. United States, Case No. 1:12-cr-78, 2016 WL 8710422 (N.D.Ga. Mar. 18, 2016) ("§ 3553(a)(6) applies in order to cure unwarranted disparities between the defendant and **_all similar offenders in other cases_**, **_not just the case at bar_**") (emphasis added).

There are numerous other cases of similarly situated defendants convicted of financial fraud crimes upon which this Court can use as a basis for a variance or departure in order to avoid disparate treatment in imposing Grady's sentence:

- United States v. Nelson, Case No. 5:16-cr-800, ECF # 36 (W.D.Tex. Aug. 24, 2018). Defendant pleaded guilty of conspiracy to defraud the United States with respect to his participation in a Ponzi scheme, with a loss of about $6.3 million, and an apparent USSG recommended sentence range of 46 to 57 months incarceration (level 23). He was sentenced to 4 years' probation, no fine, and order to pay over $6.3 million in restitution.

- United States v. Homann, Case No. 2:09-cr-724, ECF # 9 (D.N.J. Jan. 6, 2010). Defendant caused a $5 million sham loan, concealed about $6.1 million in an overseas account, and his adjusted offense level was 19.[15]  He was sentenced to 5 years' probation plus 300 hours of community service.

- United States v. Oppold, Case No. 2:10-cr-569, ECF # 19 (D.S.C. Jan. 19, 2011). Defendant's Guidelines recommended sentence was, after pleading guilty to bank fraud, level 18 with a 27 to 33 range of imprisonment. The defendant was granted a departure, and was sentenced to 18 months of home confinement.

- United States v. Holden, Case No. 3:13-cr-175, ECF # 53 (E.D.Tenn. Feb. 20, 2019). Defendant pleaded guilty to a $56 million rebate fraud conspiracy. Her plea agreement limited her loss calculation to those directly caused by her but not more than $1,000,000. She was sentenced to 2 years' probation.

---

[15] https://www.justice.gov/opa/pr/ubs-client-pleads-guilty-failing-report-61-million-swiss-bank-accounts.

- United States v. Dethrow, Case No. 1:12-cr-10038-JDB, ECF # 11 (W.D.Tenn. Jul. 23, 2012). Defendant was convicted of fraud under 42 U.S.C. § 1307, a misdemeanor, sentenced to two years' probation and ordered to pay restitution of $63,463.00.

Moreover, since departures on the grounds set forth above are authorized under the Guidelines in appropriate cases, a variance to a probationary sentence and/or a home confinement sentence would avoid unwarranted sentencing disparity, particularly in light of the Kimble probationary sentence agreed to by the Government.

### F.  Section 3553(a)(7)

The seventh factor in § 3553(a)(7) focuses on restitution. Here, Grady has agreed to pay full restitution in the amount of $85,680.00 on the day of sentencing.  Because the victim has been fully compensated, there is no need to further punish Grady beyond probation or home confinement.

### G.  Covid-19 Considerations

The Court is also requested to consider the U.S. Bureau of Prison's ("BOP") past history of handling the Covid-19 virus pandemic.  Of the 130,449 current BOP inmates, 43,468 have been infected with the virus.[16]  This represents an infection rate of over 33% of the BOP inmate population.  Clearly, the BOP has not handled the pandemic well.  The Center for Disease Control estimates that just over 10% of the total U.S. population has contracted the Covid-19 virus.[17]  According to published news reports, recent Covid-19 infections are spiking daily due to the Delta variant of the virus, and cases of infection in the United States have increased 144% in the two weeks prior to July 19, 2021.[18]  Given

---

[16] www.bop.gov/coronavirus/ (2021-07-19 search date).
[17] https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (2021-07-19 search date).
[18] https://www.npr.org/sections/health-shots/2020/09/01/816707182/map-tracking-the-spread-of-the-coronavirus-in-the-u-s (2021-07-19 search date).

that the United States is still in the throes of the pandemic, the BOP's poor record of controlling Covid-19 infections, and the circumstances of this case, there is little justification for sending Grady to prison and potentially subjecting him to an increased threat of contracting the virus.

Thus, the Court should analyze all of the Section 3553(a) factors as set forth above, in conjunction with the foregoing circumstances justifying a downward departure, including but not limited to: (1) the non-violent nature of the unlawful conduct; (2) Grady's strong family ties and overwhelming community support; (3) Grady's post-arrest rehabilitation (volunteer/community services for his mother, deeply expressed remorse); (4) Grady's agreement to cooperate with the Government's companion prosecutions; (5) the atypical nature of his misconduct; (6) the lack of a threat or danger to the community; (7) the low risk of recidivism; (8) the lack of a need to rehabilitate Grady by imprisonment; (9) the need to avoid a disparity in sentencing; (10) a Guidelines sentence of any incarceration is a substantial overstatement of the seriousness of the offense due to Grady's limited role in the offense; (11) a Guidelines sentence of any incarceration is greater than necessary to promote the purposes of federal sentencing; (12) Grady's substantial pre-arrest civic/charitable good works as a volunteer coach; (13) Grady's extraordinary acceptance of responsibility in the form of full restitution paid at sentencing; (14) Grady's certain loss of his 31-year plus job as a UPS truck driver should he be sent to prison; and, (15) the BOP's poor record of handling Covid-19.  Given the foregoing, a variance from a Guidelines sentence of up to 6 months incarceration to probation or home confinement is warranted, and respectfully requested.

## VI.    <u>CONCLUSION</u>

Based on the foregoing authorities, arguments, and evidence to be presented at sentencing, Grady respectfully requests that this Motion be granted.

Grady further respectfully requests that the Court impose a sentence of probation and/or home confinement, with appropriate conditions.

Respectfully submitted,

s/ *Joseph P. Griffith, Jr.*

_____
Joseph P. Griffith, Jr., Esquire (#2473)
946 Johnnie Dodds Boulevard
Mt. Pleasant, South Carolina 29464
(843) 225-5563 (Telephone)
(843) 722-6686 (Facsimile)
joegriffithjr@hotmail.com

Charleston, S.C.
July 22, 2021                                    Attorney for the Defendant

Exhibit A – Letter of Apology
Exhibit B – Letters of Support

motion to depart - grady sanders.2021-07-22